UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MICHAEL LEE WATTS, JR.,           )
                                  )
            Plaintiff,            )
                                  )          CIVIL ACTION NO.
VS.                               )
                                  )          3:12-CV-4248-G
L-3 COMMUNICATIONS                )
CORPORATION, ET AL.,              )
                                  )
            Defendants.           )


<u>**MEMORANDUM OPINION AND ORDER**</u>


Before the court is the motion of the defendants, L-3 Communications

Corporation and L-3 Communications AIS GP Corporation (collectively, "the

defendants" or "L-3"), for summary judgment (docket entry 41).  For the reasons set

forth below, the motion is granted.

I.  <u>BACKGROUND</u>

L-3 is a defense contractor that modifies military aircrafts.  Brief in Support of

Defendants L-3 Communications Corporation and L-3 Communications AIS GP

Corporation's Motion for Summary Judgment ("Motion for Summary Judgment

Brief") at 2 (docket entry 42).  In September of 1986, the plaintiff, Michael Lee

Watts, Jr. ("the plaintiff" or "Watts"), began working for L-3.  *Id.* at 3.  At the time of the events in question, Watts worked as a Material Requirements Planner at L-3's facility in Greenville, Texas.  *Id.* at 2-3.  He was responsible for tracking, ordering, and coordinating the delivery of parts for an airline fleet.  *Id.* at 3.  He was stationed in a building known as "Hangar 100," but he traveled throughout the facility in connection with his work.  *Id.*

Access to L-3's facility is limited.  *Id.*  Many buildings in the facility, including Hangar 100, require employees to scan their badges to enter and exit.  *Id.* at 3-4.  The facility is also equipped with security cameras, including cameras at the main entrance gate and in front of Human Resources ("HR").  *Id.* at 4.

L-3 requires its employees to keep track of the hours they work.  *Id.* at 2.  Employees often have their time charged directly to customers.  *Id.* at 2-3.  Watts was one such "direct charging" employee.  *Id.* at 3.  Employees who mischarge their time violate L-3's written policies and federal law.  *Id.* at 3 n.3.  Further, employee mischarging subjects L-3 to sanctions from the federal government.  *Id.* at 3.

In mid 2010, Harry Childress, Watts's program manager, requested that an additional person be assigned to assist Watts.  *Id.* at 4.  The request reached William Thompson ("Thompson"), who oversaw the Material Coordination Function at the facility.  *Id.*  Thompson contacted the manager of logistics, Tammy McAree, and

asked her if she thought Watts needed assistance.  *Id.*  She responded that she did

not believe Watts needed additional help.  *Id.*

After dealing with the request, Thompson became suspicious about Watts's

workload because he had seen Watts socializing while at work.  *Id.*  Watts's managers

had looked into his time records once before, but the investigation was inconclusive.

*Id.* at 4-5.  Watts was supposed to work 40 hours per week, but he was not required

to clock in at any particular time and was allowed to work a nonstandard work week

with prior approval.  Plaintiff's Response to Defendant's Motion for Summary

Judgment ("Plaintiff's Response") ¶ 7 (docket entry 47); Motion for Summary

Judgment Brief at 6-7.

Thompson approached HR with his concerns.  *Id.* at 5.  HR told Thompson to

speak with Greg Chesney ("Chesney"), a manager who had previously complained

about Watts.  *Id.*  Chesney informed Thompson that Watts visited Chesney's area

regularly to talk with Chesney's administrative assistant, even though Watts's job

duties did not require him to interact with her or be in her area.  *Id.*

With approval from HR, Thompson began to review Watts's entries in L-3's

"autotime" system.  *Id.*  Under the autotime system, employees enter the total

number of hours they work each day into a computer; those hours are approved by a

supervisor and then directly charged to the customer.  Appendix in Support of

Defendants' Motion for Summary Judgment, Exhibit P, Michael Watts Deposition

Transcript Excerpts ("Watts Dep.") at 33:6-34:18 (docket entry 43).  Thompson

compared Watts's autotime entries with the timing of Watts's badge scans at the

facility.  Motion for Summary Judgment Brief at 5.  Thompson found discrepancies

between Watts's autotime entries and the badge scans.  *Id.*

However, Watts traveled throughout the facility for work and not every

building was equipped with badge scanners.  *Id.* at 5-6.  In particular, the front gate of

L-3's facility was not equipped with a badge scanner.  Plaintiff's Response ¶ 7.

Although Watts was stationed in Hangar 100, which had a badge scanner, he did not

necessarily report directly there when he arrived at work.  *Id.*  As a result, the records

of badge scans were insufficient to discredit Watts's autotime entries.  Motion for

Summary Judgment Brief at 5-6.

On July 21, 2010, Thompson and other managers met with Watts to discuss

the discrepancies between his autotime entries and his badge scans.  *Id.* at 6.  Watts

kept a spreadsheet of the time he worked and the time he spent at the company gym.

*Id.* at 7.  Watts gave a copy of the spreadsheet to the others at the meeting.  *Id.*  L-3

then suspended Watts as it investigated his autotime entries.  *Id.*

Thompson found that the hours entered on Watts's spreadsheet matched the

total hours Watts entered into the autotime system and therefore charged to the

client.  *Id.*  However, Watts's spreadsheet was not an official company document.

Plaintiff's Response ¶ 7.  Neither Watts's pay nor the time charged to the client was

based on Watts's spreadsheet.  *Id.*  Watts kept the spreadsheet for his own benefit so that he could track the amount of time he spent at the gym and later make up that time.  Watts Dep. at 32:10-24.

Thompson then reviewed video footage of the security cameras at the main gate for March 2010 through June 2010.  Motion for Summary Judgment Brief at 7. Thompson obtained time-stamped images of Watts entering the gate.  *Id.*  Thompson identified five days on which the arrival time listed on Watts's spreadsheet did not match the arrival time on the time-stamped photos or the time of Watts's first badge scans.  *Id.* at 8.  Except for the main gate, where a video camera was located, all other entrances to the facility required a badge scan.  Watts Dep. at 28:15-29:6.

Thompson also looked into Watts's departure times for the same period. Motion for Summary Judgment Brief at 9.  He reviewed footage of Watts exiting the HR area and obtained time-stamped images.  *Id.*  Thompson also determined that Watts did not re-enter the facility through the main gate entrance or any badge scan entrance.  *Id.*  He identified three days on which the departure times listed on the spreadsheet did not match Watts's departure time on the time stamped photos or badge scans.  *Id.* at 9-10.

Based on his investigation, Thompson determined that Watts had incorrectly recorded his hours in the autotime system and therefore had incorrectly charged clients.  *Id.* at 10.  Thompson discussed his findings with upper management and

with HR, who authorized terminating Watts's employment if he could not explain the time discrepancies.  *Id.*

On July 27, 2010, Thompson, along with other personnel, met with Watts.  *Id.* at 11.  Thompson asked Watts to explain the discrepancies between his spreadsheet and the time-stamped photos.  *Id.*  Thompson relied on Watts's personal spreadsheet during the meeting, rather than showing Watts the individual autotime records. Plaintiff's Response ¶ 7.  Watts explained that "he was out in the field" but could not provide further specifics.  Appendix in Support of Defendants' Motion for Summary Judgment, Exhibit Q, William A. Thompson Deposition Transcript Excerpts ("Thompson Dep.") at 69:20-25.  Thompson then terminated Watts's employment for mischarging time.  Motion for Summary Judgment Brief at 11.  At the time of his termination, Watts was 52 years old.  Plaintiff's Response ¶ 7.  Watts was then replaced by a younger employee.  Watts Dep. at 166:16-18.

Thompson ultimately determined that 125 hours of Watts's time could not be confirmed.  Motion for Summary Judgment Brief at 12.  L-3 disclosed the mischarge to the federal government and issued a refund of $3,271.25 for the period January 1, 2010 through July 27, 2010.  *Id.*  Prior to Watts's termination, Thompson had investigated other employees for mischarging time.  *Id.* at 11.  In 2009, Thompson terminated two other employees for mischarging time, including one employee under the age of 40.  *Id.*

- 6 -

On May 9, 2011, Watts filed an age discrimination charge with the Equal
Employment Opportunity Commission ("EEOC").  Plaintiff's Original Complaint ¶ 5
(docket entry 1).  Watts alleged that he was terminated because of his age rather than
the discrepancies in his time recording.  Watts Dep. at 145:20-23.  He determined
that his age was the true reason for his termination because "they replaced [him] with
a person half [his] age that made half the money [he made]."  Watts Dep. at 145:24-
146:1.  Watts also noted that two other male employees around his age had been
fired in the two years prior to his termination.  Watts Dep. at 146:11-22, 161:18-21.
On October 15, 2011, Watts received a right to sue letter from the EEOC.  Plaintiff's
Original Complaint ¶ 6.

On January 12, 2012, Watts filed this suit against L-3.  *See generally* Plaintiff's
Original Complaint.  Watts claims that L-3 engaged in systematic policies of age
discrimination against him that led to his termination, in violation of the Age
Discrimination in Employment Act ("ADEA").  *Id.* ¶¶ 15-16.

On April 26, 2013, L-3 filed this motion for summary judgment.  *See generally*
Defendants L-3 Communications Corporation and L-3 Communications AIS GP
Corporation's Motion for Summary Judgment (docket entry 41).  L-3 argues that
Watts has failed to produce evidence showing that age played a role in Watts's
termination or that L-3's articulated reason for Watts's termination is false.  *Id.*

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[1]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").

The moving party need not actively negate the opponent's claim.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party simply must point out an absence of evidence to support the nonmoving party's claim.  *Id.* at 325.

At this stage, the court does not weigh the evidence or make credibility determinations; rather, the court merely determines if there is a genuine issue for

---

[1]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

trial. *Anderson*, 477 U.S. at 249, 255.  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  "'[E]ven in cases where elusive concepts such as motive or intent are at issue,'" summary judgment may be appropriate "'if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)), *cert. denied*, 513 U.S. 871 (1994).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, the court will only resolve factual controversies in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Moreover, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*,

353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts and "articulate the 'precise manner' in which that evidence support[s] [his] claim." *Celotex*, 477 U.S. at 324; *Forsyth*, 19 F.3d at 1537 (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## B.  Evidentiary Objections

The plaintiff raises objections to the defendants' summary judgment evidence. The plaintiff objects to the defendants' affidavits "to the extent that any of the affidavits . . . are defective," "to the extent that they do not identify the details of how and why they have personal knowledge of the information recited therein," and "to the extent that they constitute bare allegations of fact, ultimate or conclusory facts and legal conclusions."  Plaintiff's Response ¶ 14.  The plaintiff has merely stated generic objections without identifying the objectionable portions of the affidavits.  The plaintiff must state his objections specifically.  See, *e.g.*, *Burton v. Driggs*, 87 U.S. 125, 133 (1873) ("It is a rule of law that where a party excepts to the admission of testimony he is bound to state his objection specifically."); *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 682 (1st Cir. 1994) ("The

moving party must specify the objectionable portions of the affidavit and the specific grounds for objection."); *Jones v. Dallas County*, 2002 U.S. Dist. LEXIS 612, at *5 n.2 (N.D. Tex. Jan. 14, 2002) (Kaplan, M.J.) ("Such vague and general objections do not merit consideration."); *Payne v. Collins*, 986 F. Supp. 1036, 1057 (E.D. Tex. 1997) (overruling an objection to an affidavit for failing to specify the portions of the affidavit to which it refers).  The court overrules the plaintiff's objections.

## C.  ADEA

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To succeed on his ADEA claim, the plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of his termination.  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)).  The plaintiff "may rely on direct or circumstantial evidence, or both."  *Jackson v. Cal-Western Packaging Corporation*, 602 F.3d 374, 377 (5th Cir. 2010).

In this case, where direct evidence of discrimination is unavailable, the plaintiff can prove discrimination using the three part "modified McDonnell Douglas approach."  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### 1.  *Prima Facie Case*

First, the plaintiff must establish a *prima facie* case of discrimination under the ADEA, which "creates a presumption that the employer unlawfully discriminated against [him]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  A *prima facie* case of age discrimination requires that the plaintiff show "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309 (quoting *Palasota v. Haggar Clothing Company*, 342 F.3d 569, 576 (5th Cir. 2003)) (internal quotation marks omitted).  For the purposes of the motion for summary judgment, the defendants "do not dispute that Watts is 40 years of age or older, was qualified for the position, subjected to an adverse employment action and replaced by someone younger." Motion for Summary Judgment Brief at 14 n.17.  Thus, the plaintiff has established his *prima facie* case.

### 2.  *Legitimate, Nondiscriminatory Reason*

Once a plaintiff has established his *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).  The defendants' burden is one of production, not persuasion, and involves no credibility

assessments.  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003)

(quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

"The employer is not required to convince the Court that it was actually motivated by

this reason."  *Nasti v. CIBA Specialty Chemicals Corporation*, 492 F.3d 589, 593 (5th

Cir. 2007) (citing *Burdine*, 450 U.S. at 254).  The defendants simply must set forth

"reasons for [their] actions, which, *if believed by the trier of fact*, would support a finding

that unlawful discrimination was not the cause of the employment action."  *St.*

*Mary's*, 509 U.S. at 507 (emphasis in original) (citing *Burdine*, 450 U.S. at 254-55

and n.8).  However, the defendants' reasons must be "clear and reasonably specific."

*Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 513 (5th Cir.

2001).

The defendants' proffered reason for the plaintiff's termination is that the

plaintiff mischarged his time in violation of company policy and federal law.  Motion

for Summary Judgment Brief at 15-16.  A violation of company policy is

unquestionably a legitimate, nondiscriminatory reason for termination.  *Rachid*, 376

F.3d at 313; see, *e.g.*, *Swenson v. Schwan's Consumer Brands North America, Inc.*, 500 F.

App'x 343, 345 (5th Cir. 2012) (violation of company's vacation policy); *Jackson*, 602

F.3d at 378 (violation of company's sexual harassment policy); *Bauer v. Albemarle*

*Corporation*, 169 F.3d 962, 965, 967 (5th Cir. 1999) (violation of conflict of interest

and confidentiality policies); *Eldridge-Hall v. City of Houston*, 2005 U.S. Dist. LEXIS

47117, at *1-2 , *15 (S.D. Tex. May 16, 2005) (violation of time-clock policy).  The

defendants have therefore satisfied their burden of production.

### 3.  *Pretext*

After the defendant offers a legitimate, non-discriminatory reason for its

conduct, the burden shifts back to the plaintiff to present evidence "that the

legitimate reasons offered by the defendant[s] were not [their] true reasons, but were

a pretext for discrimination."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

143 (2000) (quoting *Burdine*, 450 U.S. at 253).  "To establish pretext, [the] plaintiff

cannot merely rely on his subjective belief that discrimination has occurred; rather, he

has the ultimate burden of persuasion . . . throughout the case."  *Price v. Marathon*

*Cheese Corporation*, 119 F.3d 330, 337 (5th Cir. 1997).  The plaintiff must produce

sufficient evidence for a reasonable trier of fact to find either that L-3's proffered

explanation is unworthy of credence or that a discriminatory reason more likely

motivated the decision to terminate him.  *Burdine*, 450 U.S. at 256.  "Evidence that

[L-3's] proffered reason is unworthy of credence must be enough to support a

reasonable inference that the proffered reason is false; a mere shadow of a doubt is

insufficient."  *Equal Employment Opportunity Commission v. Louisiana Office of Community*

*Services*, 47 F.3d 1438, 1444 (5th Cir. 1995).

A jury may infer "the ultimate fact of discrimination from the falsity of the

employer's explanation."  *Reeves*, 530 U.S. at 147.  As a result, if the plaintiff can

provide sufficient evidence for a reasonable jury to conclude that L-3's proffered

reason is false, the motion for summary judgment may be denied. *Machinchick v. PB*

*Power, Inc.*, 398 F.3d 345, 350-51 (5th Cir. 2005). However, even if the plaintiff

provides sufficient evidence to reject L-3's explanation, the motion for summary

judgment will be granted if "'no rational factfinder could conclude that the action was

discriminatory.'" *Price v. Federal Express Corporation*, 283 F.3d 715, 720 (5th Cir.

2002) (quoting *Reeves*, 530 U.S. at 148). Further, the court may grant the

defendants' motion for summary judgment if the plaintiff creates only a weak fact

issue as to the falsity of the defendants' proffered explanation and there is ample

uncontroverted evidence that no discrimination occurred. *Id.* at 724 (quoting *Reeves*,

530 U.S. at 148). "Whether summary judgment is appropriate depends on numerous

factors, including 'the strength of the plaintiff's prima facie case, the probative value

of the proof that the employer's explanation is false, and any other evidence that

supports the employer's case.'" *Id.* at 720 (quoting *Reeves*, 530 U.S. at 148-49).

The plaintiff first attempts to show pretext by pointing out that he "was never

reprimanded or written up over the issue prior to his termination." Plaintiff's

Response ¶ 10. It is within the employer's discretion to manage violations of

company policy in any way it sees fit, as long as its methods are non-discriminatory.

See *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)

("Management does not have to make proper decisions, only non-discriminatory

ones."), *cert. denied*, 564 U.S. 1090 (2006).  An employer may terminate an employee for his first offense or his tenth offense, if it so chooses.  An employer may or may not choose to reprimand an employee prior to termination.  "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citing *Thornbrough v. Columbus & Greenville Railroad Company*, 760 F.2d 633, 647 (5th Cir. 1985); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983)).  The mere fact that the plaintiff had not been approached about mischarging time before his termination does not establish that the defendant's proffered reason for the termination was pretextual.

The plaintiff also places heavy emphasis on the fact that the spreadsheet "upon which Thompson relied to terminate him was not an official company document." Plaintiff's Response ¶ 12.  The plaintiff notes that he only kept the spreadsheet "for his own purposes and [it] did not form the basis of the time that Plaintiff charged to his job or the time for which Plaintiff was paid." Plaintiff's Response ¶ 10.  The plaintiff further complains that Thompson did not rely upon the official autotime records.  *Id.*  However, Thompson did check the autotime records and found that the total hours entered into the spreadsheet were consistent with the number of hours the plaintiff charged via autotime.  Appendix in Support of Defendants' Motion for

Summary Judgment, Exhibit A, Affidavit of William A. Thompson ("Thompson

Aff.") ¶ 14.

More importantly, the plaintiff's suggestion that his termination was based on

an inaccurate, unofficial document does not establish pretext.  In *Swenson*, the

plaintiff was terminated at age 56 for violating his employer's vacation policy by

awarding a subordinate vacation time for days on which he was not scheduled to

work.  500 F. App'x at 344.  Swenson argued that his actions were consistent with

the company's policy, and therefore the employer was factually incorrect in its

determination that he had violated the policy.  *Id.* at 346.  In affirming a grant of

summary judgment against Swenson, the court concluded that "pretext is not

established merely because the company was mistaken in its belief, if honestly held.

Whether [the company's] conclusion was correct is irrelevant; if [the company's]

belief that Swenson violated company policy motivated its discharge decision, then it

was not a pretext."  *Id.*  Similarly, in this case, it is not relevant whether the

defendants' decision to terminate the plaintiff was based on an incorrect spreadsheet.

The question is not whether the defendants' investigation into the plaintiff's time

records was poorly executed but whether the investigation was a bad faith pretext for

age discrimination.  Even assuming that the defendants terminated the plaintiff based

solely on incorrect information, the plaintiff has only established that the defendants

made a mistake.  "The ADEA cannot protect older employees from erroneous or even

arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski*, 851 F.2d at 1508; see also *Evans v. Texas Department of Transportation*, 547 F. Supp. 2d 626, 648 (E.D. Tex. 2007) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). The plaintiff's task is not to demonstrate that he did not mischarge time; rather, the plaintiff's task is to demonstrate that the defendants did not in good faith believe that he mischarged time.[2]  See *Swenson*, 500 F. App'x at 346.

The plaintiff next argues that the photos the defendants relied on to establish his arrival and departure times "do not establish[ ] anything other than he was at the

---

[2]  The plaintiff argues that this case mirrors another case in the Northern District, *Foster v. Regis Trade Secret, Inc.*, 2008 U.S. Dist. LEXIS 21525 (N.D. Tex. Mar. 19, 2008) (O'Connor, J.). Plaintiff's Response ¶ 12. In *Foster*, Foster was terminated at age 59 from her job at a salon when her supervisor determined that she had falsified company documents. *Id.* at *12. Foster presented evidence that she did not falsify company documents. *Id.* at *16-17. Although the court acknowledged that the defendant's "evidence tends to show that it reasonably believed plaintiff had falsified company documents and therefore did not use this reason as a pretext for age discrimination," the court nonetheless denied the defendant's motion for summary judgment. *Id.* at *19, *22. This case is undoubtedly similar to *Foster*. However, the Fifth Circuit has clearly held that "[t]he issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the employee's] termination." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (citing *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001)), *cert. denied*, 539 U.S. 926 (2003). As a result, whether the defendants were correct in believing that the plaintiff mischarged time is not a material fact for the purposes of summary judgment. As long as the evidence shows there is no genuine issue of fact that the defendants reasonably believed that the plaintiff mischarged time, this court may grant summary judgment.

- 18 -

location where the photo was taken at the time reflected on the photo.  The photos do not prove whether Plaintiff was working or not working and do not establish a basis for any allegation that [ ]he falsified his time records."  Plaintiff's Response ¶ 11.  It is true that the photos, on their own, do not establish anything other than the plaintiff's location at the time.  However, the defendants used the photos in conjunction with the times of the plaintiff's badge scans.  Every entrance to the facility was equipped with either a badge scanner or a camera.  Watts Dep. at 28:15-29:6.  As a result, the photos, together with the badge scans, provide accurate documentation of the plaintiff's arrival and departure times.  The plaintiff also points out that he provided a (vague) explanation for the time discrepancies, namely that he was "likely out on the grounds."  Plaintiff's Response ¶ 12; *see* Thompson Dep. at 69:20-25.

The plaintiff's challenges to the meaning of the photo evidence and the plaintiff's explanation for the time discrepancies are irrelevant to his pretext burden.  Again, neither the plaintiff's innocence nor the accuracy of the defendant's investigation are at issue.  The issue is only whether the defendants *in good faith believed* that the plaintiff mischarged his time or whether that explanation was merely a bad faith pretext for age discrimination.  See *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165-66 (5th Cir. 1993).

The plaintiff also points out that two other employees over the age of forty, Brian Stewart and Glen Black, had been fired in the two years prior to the plaintiff's termination.  Plaintiff's Response ¶ 13; Watts Dep. at 146:11-22, 158:3-6, 161:18-21.  Aside from the bare facts that Glen Black was over the age of forty and replaced by someone younger, there is no evidence in the record to suggest that his termination was related to his age.  In his deposition, the plaintiff stated that he did not know why Glen Black had been terminated nor had he heard any reason why he may have been terminated.  Watts Dep. at 159:7-24.  More fundamentally, although evidence that younger employees were retained in place of the plaintiff and Black is relevant to the plaintiff's *prima facie* case, it does not establish pretext.  See *Chapman v. The Dallas Morning News, L.P.*, 2008 U.S. Dist. LEXIS 42191, at *28 (N.D. Tex. May 27, 2008) (Boyle, J.).

Brian Stewart's termination is even more ambiguous.  Unlike Glen Black, who was also terminated by Thompson, there is no evidence before the court of who terminated Brian Stewart or why.  Watts Dep. at 162:4-14.  Further, the record suggests that in the two years since Brian Stewart's firing, his position has remained vacant.  Watts Dep. at 162:1-2.  Glen Black and Brian Stewart's terminations are insufficient to create a fact issue regarding the defendant's allegedly discriminatory practices.  See *Wyvill v. United Companies Life Insurance Company*, 212 F.3d 296, 302 (5th Cir. 2000) (concluding that isolated or sporadic discriminatory acts do not show

a practice of discrimination and that testimony from former employees who had

different supervisors or whose terminations were removed in time from the plaintiff's

termination are not probative of whether age was a determinative factor in the

plaintiff's case), *cert. denied*, 531 U.S. 1145 (2001).  The plaintiff cannot survive

summary judgment based on unsupported speculation that age discrimination played

a role in Glen Black's and Brian Stewart's terminations.  *Forsyth*, 19 F.3d at 1533

(citing *Krim*, 989 F.2d at 1449).

Further, the plaintiff himself indicated that he felt his salary motivated his

termination:

> A. Just what I said.  They -- they terminated someone --
> terminated me at my age with the salary I had.  And then
> the 401(k) plan the way it was laid out for people of my
> age and replaced it with someone that may [sic] half the
> money and could not do the 401(k) the same way I could
> have.
>
> . . .
>
> Q.  So you believe that you were terminated by L-3
> because it would ultimately save L-3 money?
>
> A.  In the long run it will.
>
> Q.  Is that your belief?
>
> A.  Yes.
>
> Q.  As to why you were terminated?
>
> A.  Yes.

- 21 -

Watts Dep. at 168:8-169:2.  Even if the defendant terminated the plaintiff's employment in order to save money, this explanation actually detracts from the plaintiff's age discrimination claim.  See *Hazen Paper Company v. Biggins*, 507 U.S. 604, 608-09 (1993) (concluding that an employer acting on the basis of a factor other than age, even a factor empirically correlated with age such as pension status or seniority, does not violate the ADEA); *Armendariz v. Pinkerton Tobacco Company*, 58 F.3d 144, 152 (5th Cir. 1995) ("[T]he ADEA prohibits discrimination on the basis of age, not salary or seniority."), *cert. denied*, 516 U.S. 1047 (1996).

Finally, the fact that the plaintiff was terminated by a member of the protected class raises an inference that his termination was not age related.  *Chapman*, 2008 U.S. Dist. LEXIS 42191, at *29 (noting that the ultimate decision maker was within the same protected class as the plaintiff); *Skinner v. Brown*, 951 F. Supp. 1307, 1320 (S.D. Tex. 1996) (concluding that inference that no discriminatory motive existed was enhanced by the supervisor's presence in the protected class of the ADEA), *aff'd*, 134 F.3d 368 (5th Cir. 1997).  Thompson was 55 years old at the time of the plaintiff's termination -- older than the plaintiff.  Thompson Aff. ¶ 23.  Further, Thompson had previously terminated two other employees for mischarging time, including one under the age of 40.  *Id.* ¶ 22.  These actions suggest that employee mischarging of time was a real consideration for the defendants and not a mere pretext for discrimination.

The plaintiff has not presented sufficient evidence to overcome these inferences.  At best, the plaintiff has presented weak evidence that he may have been innocent of mischarging.  However, the plaintiff has not put forth competent evidence to show that the defendant's belief that he mischarged time was unreasonable or in bad faith.  Since the defendant's good faith belief that the plaintiff violated company policy is the legally relevant issue, the plaintiff has failed to satisfy his burden.  The plaintiff has not raised an issue of material fact that the defendant's proffered reason for his termination is false.  The defendant's motion for summary judgment is therefore granted.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendants.

**SO ORDERED**.

July 22, 2013.

**A. JOE FISH**
**Senior United States District Judge**

- 23 -